O'REILLY v. BLAISDELL PAPER PENCIL CO.

(Supreme Court, Appellate Term, First Department. June 25, 1915.)

1. FRAUDS, STATUTE OF ⚖️➼103—MEMORANDA—SUFFICIENCY.
    The statute of frauds is complied with by informal memoranda evidencing a complete contract, though the parties intend to make a formal contract.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 192–198, 200–208; Dec. Dig. ⚖️➼103.]

2. FRAUDS, STATUTE OF ⚖️➼113—MEMORANDA—SUFFICIENCY.
    A letter by defendant to plaintiff, offering plaintiff a commission on goods sold during two years, showed that the parties contemplated that any agreement should be subject to a cancellation clause, and that subject was left open. Plaintiff's reply showed that the cancellation clause was being considered, and that the length of notice of cancellation was open to discussion, but accepted the terms as to commissions on sales for the two years. No further agreement was ever entered into. *Held* that, so far as the contract evidenced by the letters was executory, it was unenforceable, under the statute of frauds, since the correspondence did not show a meeting of minds as to the cancellation clause.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 239–241; Dec. Dig. ⚖️➼113.]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Margaret B. O'Reilly against the Blaisdell Paper Pencil Company. From a judgment of the Municipal Court for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued March term, 1915, before LEHMAN, HENDRICK, and COHALAN, JJ.

Rogers & Rogers, of New York City (Gustavus A. Rogers and Saul E. Rogers, both of New York City, of counsel), for appellant.

McReynolds & Hunter, of New York City (William E. McReynolds, of New York City, of counsel), for respondent.

LEHMAN, J. The plaintiff has recovered a judgment for the sum of $257.07. She claims in her complaint that she is entitled to expenses incurred by her and 10 per cent. commissions upon all sales made by the defendant to the board of education of the city of New York under a contract made on or about September 27, 1912, which was to continue during the years 1913 and 1914. She testified that she paid out for expenses between the 16th day of March, 1913, and the 29th day of April, 1914, the sum of $164.56, and that between January 2, 1914, and April 29, 1914, the defendant sold to the board of education supplies of the value of $925.10, on which she is entitled to commissions of 10 per cent.

The plaintiff, in order to prove the alleged written contract, introduced in evidence a considerable amount of correspondence, and she claims that a letter from the defendant's agent of September 27th, and her answer thereto, dated October 4th, read together, constitute a complete contract. These letters, so far as material, read as follows:

"Philadelphia, Pa., Sept. 27, 1912.

"Miss M. B. O'Reilly, 43 West 128th Street, New York City, New York—Dear Miss O'Reilly: Before I start I realize that this is going to be a long letter. Will you please read it with care and oblige me by taking the time to respond to each of the subjects I mention as fully as you can. If you prefer to do so go to a public stenographer and dictate your answer.

"I have given a good deal of careful thought to the subject of the contract which you requested me to draw up. I think you are fully aware that I would not draw up any contract which was not at least as fair to you as to this company. There are some features of the proposition that you mentioned which I do not think are fair to you. I make this statement after mature consideration. Simply to mention one feature of this kind. I believe you will find after you have carefully thought over the matter that the six months' notice is unwise—unwise I mean from your point of view especially.

"There are other features which I could mention but these are matters that I believe can be much better talked out than written about. I am therefore going to request you to defer the whole subject till I have another talk with you. I will come over to New York some time within the next two weeks. In the meanwhile you may rest assured that the main features of the contract will be as you desire them. A ten per cent. (10%) commission on all goods sold to the board of education of New York City; allowance for car fares incurred in attending to the sale of these goods; allowance for such other incidental expenses as may reasonably be incurred in the work; and the arrangement to extend for the years 1913 and 1914."

The plaintiff answered this letter on October 4, 1912, and the material parts of her letter read as follows:

"Blaisdell Paper Pencil Co., Philadelphia, Pa.—Gentlemen: I am in receipt of your favor of the 27th ult. and will reply carefully to each of the subjects you mention. In reference to the six months' notice, I would be glad to have you write me your idea as to how much notice would be fair to both parties and will surely give any suggestion you make careful consideration. In other respects your statement that a ten per cent. (10%) commission will be paid by your company on all goods sold to the board of edu-

cation of New York City, allowance for car fares incurred in attending to the sale of these goods, allowance for such other incidental expenses as may reasonably be incurred in the work and the arrangement to extend for the years 1913 and 1914, are entirely satisfactory and accepted. My commissions to be paid me between the 1st and 6th of each month on all orders received during the previous month."

On October 8th the defendant answered:

"The matter of the contract, concerning which you speak in your second paragraph, I think this can rest until I see you."

No formal contract was thereafter made between the parties, and on October 23d the plaintiff wrote to the defendant's agent as follows:

"Mr. O. H. Stuart, Blaisdell Paper Co., Philadelphia, Pa.—My Dear Mr. Stuart: Referring to your letter of September 27th—12, I would be pleased to have you prepare a contract in accordance with specifications therein contained and which I accepted and forward same by return mail.
        "Yours truly,                                M. B. O'Reilly."

On November 5th the defendant wrote:

"My Dear Miss O'Reilly: I have made three attempts to write out the terms of contract with you and have not been able to let them stand as written. The one item that I find impossible to formulate is that regarding expense. We cannot agree to any blanket covering the matter of expense. We think it is fair for us to pay your car fares, as well as your commissions; and we would like very much to give you some rein in the matter of miscellaneous or entertainment expense but the items of this character with the business you will understand would necessarily have to be infrequent and simple, much simpler for example than the item contained in your mem orandum of October 17th to October 30th. * * * If you believe you can write a satisfactory clause covering the expense item, we will certainly be glad to have you do so."

On November 8, 1912, the plaintiff wrote:

"Regarding the contract it is impossible for me to frame a clause regarding the expense item and in fact see no real necessity for any contract than that contained in the third paragraph of your letter of September 27, 1912, which was entirely agreeable to me and duly accepted."

Thereafter the plaintiff continued for some months to work for the defendant. She sent in at intervals a statement of her expenses, and these seem to have been regularly paid, although the correspondence shows that the defendant continually objected that they were out of proportion to the results, and on March 31, 1913, the defendant wrote the plaintiff:

"This of course simply cannot go on. I am not willing to O. K. any more expense items. I have told Mr. L. H. Heist, Treas., that. He will pay the a/c now in and will of course continue to pay the ten per cent. (10%) commission. But we cannot pay any more accounts—not until we see commensurate results."

The plaintiff now claims that she had an enforceable contract for two years evidenced by plaintiff's letter of September 27th and her acceptance of October 3d, and that the defendant could not terminate it in this fashion until the expiration of its term.

[1, 2] There is, of course, no doubt but that the statute of frauds

can be complied with by informal memoranda which evidence a complete meeting of the minds upon all the terms of a contract, even though the parties intended to embody all of the terms of the agreement in a formal contract. In this case, however, the writings, when read together, fail to show a complete meeting of the minds upon the terms of such a contract. The defendant's letter of September 27th shows that the parties contemplated that any agreement should be subject to a cancellation clause, and that this and other matters were left open to discussion. The plaintiff's letter of October 3d expressly shows that the inclusion of such a clause was still being considered, and the matter of the length of the notice was still open to discussion. Even if we should hold that the parties have shown a meeting of the minds on all other questions, they were therefore still not agreed upon one important part of the contract. It seems to me clearly erroneous to hold that so long as the parties were contemplating a contract for two years, terminable by some notice, but had not yet agreed as to the length of notice, the acceptance of the remaining terms of the contract could bind the parties absolutely to a contract for two years, without right of termination. The plain effect of the correspondence is that while the parties had agreed as to many of the important conditions of the plaintiff's employment, there was no meeting of the minds on some essential particulars. It follows that, so far as the contract was executory in March, 1913, it is unenforceable, and the plaintiff has no cause of action under the contract from that date.

Judgment should be reversed, with costs, and complaint dismissed, with costs. All concur.